UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

THOMAS CASTRO                          :
                                       :
        v.                             :        C.A. No. 13-736S
                                       :
CAROLYN COLVIN                         :
Commissioner of the Social Security    :
Administration                         :

## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Supplemental Security Income ("SSI") benefits under the Social Security Act (the "Act"), 42 U.S.C. § 405(g).  Plaintiff filed his Complaint on November 8, 2013 seeking to reverse the decision of the Commissioner.  On July 29, 2014, Plaintiff filed a Motion to Reverse the Decision of the Commissioner.  (Document No. 14). On September 12, 2014, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner.  (Document No. 15).

This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72.  Based upon my review of the record, the parties' submissions and independent research, I find that there is substantial evidence in this record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act.  Consequently, I recommend that the Commissioner's Motion for Order Affirming the

Decision of the Commissioner (Document No. 15) be GRANTED and that Plaintiff's Motion to Reverse the Decision of the Commissioner (Document No. 14) be DENIED.

## I.     PROCEDURAL HISTORY

Plaintiff filed an application for SSI (Tr. 117-126) on March 18, 2011 alleging disability since June 3, 2000 (Tr. 117) due to ADHD, Asperger's Syndrome, Dyslexia, Expressive/Receptive Language Disorder, and Learning Disorder, NOS (math, written expression).  (Tr. 42).   The application was denied initially on May 31, 2011 (Tr. 42-50) and on reconsideration on September 30, 2011.  (Tr. 52-61).  On December 7, 2011, Plaintiff requested an Administrative hearing.  (Tr. 72).  On July 27, 2012, a hearing was held before Administrative Law Judge Hugh S. Atkins (the "ALJ") at which time Plaintiff, represented by counsel, and a vocational expert ("VE") appeared and testified.  (Tr. 25-40).  The ALJ issued an unfavorable decision to Plaintiff on August 13, 2012.  (Tr. 10-21).  The Appeals Council denied Plaintiff's Request for Review on September 9, 2013, therefore the ALJ's decision became final.  (Tr. 1-3).  A timely appeal was then filed with this Court.

## II.     THE PARTIES' POSITIONS

Plaintiff argues that the ALJ erred because he did not give adequate weight to the treating source opinions and failed in meeting his burden at Step 5 of the sequential evaluation process.

The Commissioner disputes Plaintiff's claims and asserts that the ALJ's decision is supported by substantial evidence.

## III.     THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence

as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law.  Nguyen v. Chater, 172 F.3d  31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).  Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled.  Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences.  Seavey, 276 F.3d at 8.  To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim.  Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980)

(remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Id. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id.

The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. Id.

## IV.    THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.    Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a

treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(c). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(c)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

**B.      Developing the Record**

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists

if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C. Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

### D. The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth,

if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

### E.    Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a

claimant. <u>Allen v. Sullivan</u>, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). <u>Seavey</u>, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. <u>Id.</u>; <u>see also</u> <u>Heckler v. Campbell</u>, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. <u>Nguyen</u>, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. <u>Heggarty</u>, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. <u>See</u> <u>Ferguson v. Schweiker</u>, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1. Pain

"Pain can constitute a significant non-exertional impairment." <u>Nguyen</u>, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42

U.S.C. § 423(d)(5)(A).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1)   The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2)   Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3)   Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4)   Treatment, other than medication, for relief of pain;
>
> (5)   Functional restrictions; and
>
> (6)   The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986).  An individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

## 2.   Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Rohrberg, 26 F. Supp. 2d at 309.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia, 829 F.2d at 195.  The failure to articulate the reasons for discrediting subjective pain testimony requires

that the testimony be accepted as true.  See <u>DaRosa v. Sec'y of Health and Human Servs.</u>, 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See <u>Smallwood v. Schweiker</u>, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  <u>Foote v. Chater</u>, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting <u>Tieniber v. Heckler</u>, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V.     APPLICATION AND ANALYSIS

Plaintiff was twenty years old on the date of the ALJ's decision.  (Tr. 29).  Plaintiff completed high school and had limited work experience through the Office of Rehabilitation Services ("ORS") in a retail setting.  (Tr. 30-31).

Plaintiff received primary care from Dr. Roger Fazio of Wakefield Pediatrics, LLC from at least January 16, 2008.  (Tr. 264).  On February 10, 2009, he was noted to be "doing very well" on Adderall XR and on the honor roll in special education classes (Tr. 268).  He saw Dr. Fazio regularly through April 24, 2012.  (Tr. 265-272, 288).  These treatment notes reflect Plaintiff's diagnoses of ADHD and Asperger's syndrome, and adjustment of his Adderall dosage to support his academic progress.  In his final treatment note, dated April 24, 2012, Dr. Fazio noted that Plaintiff's "biggest problem is his lack of understanding of typical social interactive skills and his poor language skills. He does have a big problem following directions and working independently."  (Tr. 288).

Plaintiff underwent a neuropsychological evaluation with Brett Leimkuhler, Ph.D., of The Center for Neuropsychology and Learning Disorders, Inc. on May 18, May 19, and May 24, 2010,

when he was seventeen years old and in the Eleventh Grade. (Tr. 229-240). Plaintiff and his parents reported diagnoses of ADHD Combined Type, Reading Disorder, Receptive Expressive Language Disorder, and Asperger's syndrome. (Tr. 229). It was reported that he had done well in self-contained classes, and in mainstream science classes, in the Ninth and Tenth Grades, though his grades had declined over the past year. Id. Plaintiff had been prescribed Adderall XR 30 mg, without which he said "he acts all silly and goofy." Id. Dr. Leimkuhler noted a history of hyperactivity, a hard time making friends and trouble interacting with others. (Tr. 230). He struggled in math and reading, had trouble with organization and time management and required a great deal of supervision and explanation to do his school work. Id. For recreation, Plaintiff played soccer, belonged to a Japanese anime group at school, and enjoyed art, including drawing and sculpture. Id. Plaintiff presented as quiet and was passively cooperative with the evaluation process, giving minimal responses to questions and demonstrating a very literal interpretation of questions. (Tr. 231).

Throughout the testing process, Plaintiff generally put forth adequate effort, but stopped working when tasks became more challenging. Id. He showed variable attention and concentration, with lack of focus and drifting of attention at times; he often required multiple prompts, cues, and questions to elicit a response. Id. He worked at a very slow pace, especially with language-based tasks, and was "rather fidgety," with euthymic mood and restricted affect. Id. Test results revealed functioning in the average range of intellectual ability; however, working memory and processing speed indexes showed significant problems with attention and executive functions. (Tr. 232). Areas of cognitive strength included general fund of knowledge, nonverbal reasoning, visual memory, word list learning, naming, picture vocabulary, visual integration, fine motor speed, and

coordination; areas of relative weakness included working memory, open-ended verbal reasoning, visual motor processing speed, reading decoding, reading speed, math reasoning, spelling, written expression, timed reading comprehension, cognitive flexibility, sustained attention and concentration, memory for auditorally presented narrative material and work fluency.  Id.  Dr. Leimkuhler diagnosed ADHD, Inattentive/Executive Function type, Asperger's disorder, dyslexia, expressive/receptive language disorder and learning disorder, NOS (math, written expression).  (Tr. 232-233).  He estimated Plaintiff's global assessment of functioning ("GAF") in the range of 50-55, consistent with serious to moderate symptoms or functional difficulties.  Dr. Liemkuhler recommended that Plaintiff receive an Individualized Educational Plan ("IEP") and a number of academic accommodations and that several supportive strategies and therapies be implemented.  (Tr. 234-236).

On May 26, 2011, state agency consultant reviewing psychologist Jeffrey Hughes, Ph.D., reviewed Plaintiff's records as of that date.  (Tr. 45-46).  In his findings, Dr. Hughes assessed Autistic Disorders and Other Pervasive Developmental Disorders, a Learning Disorder, and attention deficit disorder/ADHD, all of which were severe, resulting in moderate restriction of activities of daily living and moderate difficulties in maintaining social functioning and concentration, persistence or pace. (Tr. 45).  Dr. Hughes then assessed Plaintiff's mental RFC, finding him capable of remembering and following only simple instructions, finishing simple 1-3 step familiar tasks over the course of a normal workday and workweek; tolerating straightforward, superficial interactions; and accepting supervision.  (Tr. 47-48).  The evidence Dr. Hughes considered included Dr. Leimkuhler's neuropsychological evaluation.  (Tr. 44-45).

On August 1, 2011, Dr. Fazio wrote a letter in support of Plaintiff's SSI application. (Tr. 263). Dr. Fazio recounted Plaintiff's diagnoses, and stated that Plaintiff had difficulty acquiring, retaining, and retrieving new information, as well as difficulty with oral receptive and expressive language. Id. Dr. Fazio felt that due to his Asperger's syndrome, Plaintiff had deficits in social and interpersonal skills, tended to be socially isolated and sometimes displayed symptoms of social anxiety. Id. Dr. Fazio stated that it would be difficult for Plaintiff to work independently, because he needed constant reminders to stay focused and on task and needed to be frequently reminded what the task at hand was. Id. Transportation would also be difficult because Plaintiff could not safely drive. Id.

On August 17, 2011, Dr. Fazio completed a Medical Report (General) form recounting Plaintiff's diagnoses, and indicating difficulties with socializing, conversing, interacting and focusing. (Tr. 264). Dr. Fazio indicated that Plaintiff's ADHD medication "helps only a little with focus and attention," and that while Plaintiff had made progress, "he is easily overwhelmed and is dependent upon parents for many decisions of daily living." Id. Dr. Fazio felt that "[i]t is important he is allowed to attend school without working so he can focus and succeed." Id.

On September 29, 2011, a second state agency reviewing psychologist, Michael Slavit, Ph.D., reviewed Plaintiff's updated records and reached findings consistent with Dr. Hughes' findings. (Tr. 56-57). Dr. Slavit also assessed Plaintiff's RFC, finding him capable of non-complex instructions, requiring repetition of unfamiliar instructions longer than two steps; the ability to sustain work in two-hour blocks throughout an eight-hour schedule at routine tasks in a typical work setting; tolerating straightforward, superficial interactions; and making work decisions limited to objects and procedures. (Tr. 58-60). In addition to Dr. Leimkuhler's neuropsychological evaluation,

-14-

Dr. Slavit also considered Plaintiff's school records (Tr. 55-56, 161-84), and afforded "great weight" to Dr. Fazio's August 1, 2011 opinion letter. (Tr. 57).

On July 2, 2012, Dr. Fazio completed a Supplemental Questionnaire As To Residual Functional Capacity form indicating that Plaintiff had moderately severe or severe impairments in every area of mental functioning, including the abilities to relate to other people; understand, remember, and carry out instructions; respond appropriately to supervision and to co-workers; respond to customary work pressures; and perform simple or repetitive tasks. (Tr. 289-290). Dr. Fazio indicated that the suggested limitations had been present since at least 1999, and indicated that his opinion was based in part on consideration of a psychological evaluation. (Tr. 290).

### A. Plaintiff Has Shown No Error in the ALJ's Assessment of His Treating Pediatrician's Opinion

Dr. Fazio was Plaintiff's treating pediatrician from 2008 for approximately three to five visits per year. (Tr. 264, 268). On July 12, 2012, Dr. Fazio opined that Plaintiff had moderately severe to severe degrees of mental impairment. (Tr. 289-290). The ALJ discussed the opinion and concluded that "Dr. Fazio's opinion is not entirely supported by objective findings" and that it was "largely unsupported by treatment notes and school reports." (Tr. 19). Plaintiff argues that, under the treating physicians rule, the opinion of Dr. Fazio was entitled to controlling weight and that the ALJ erred by failing to afford it such weight. Plaintiff has shown no error in the ALJ's treatment of Dr. Fazio's opinions.

Because a treating physician is typically able to provide a detailed longitudinal picture of a patient's impairments, an opinion from a treating source is generally entitled to considerable weight if it is well supported by clinical findings and not inconsistent with other substantial evidence of

record.  20 C.F.R. § 404.1527(d); see also Castro v. Barnhart, 198 F. Supp. 2d 47, 54 (D. Mass. 2002) (The ALJ "may reject a treating physician's opinion as controlling if it is inconsistent with other substantial evidence in the record, even if that evidence consists of reports from non-treating doctors").  The amount of weight to which a treating source opinion is entitled depends in part on the length of the treating relationship and the frequency of the examination.  20 C.F.R. § 404.1527(d)(1).  If the treating physician's opinion is not given controlling weight, the opinion must provide "good reasons" for the level of weight given.  20 C.F.R. § 404.1527(d)(2).

Here, the ALJ found that the opinions of Dr. Hughes and Dr. Slavit, two State agency non-examining psychologists, were controlling because they were "not inconsistent with the medical evidence as a whole." (Tr. 20).  Dr. Hughes opined on May 26, 2011 that Plaintiff was limited to simple, unskilled work and that his non-exertional limitations did not significantly erode the occupational base.  (Tr. 49).  Thus, he concluded that a non-disability determination could be made pursuant to Section 204.00 of the "grids."  Id.  He also found that Plaintiff's limitations did not prevent him from working.  Id.  On September 29, 2011, Dr. Slavit reached the same basic conclusions.  (Tr. 60-61).

Further, the ALJ found the opinion of Dr. Fazio on Plaintiff's moderately severe and severe mental functional limitations to be inconsistent with evidence of Plaintiff's past work as a part-time sales associate at Walmart, where he had perfect attendance and "was consistently rated as above average in general speed, following directions, working independently, staying on tasks, and completing assignments." (Tr. 19).  Similarly, the ALJ found that Dr. Fazio's opinion that Plaintiff is too easily distracted is inconsistent with the evidence of Plaintiff's positive reaction to the medication Adderall, placement on the honor roll in his special education classes, and his enrollment

in a college-level drawing class.  Id.  The ALJ found inconsistencies between the opinion of Dr.

Fazio and those of Dr. Hughes and Dr. Slavit and gave good reasons for the level of weight given

to each doctor's opinions.  Since those reasons are supported by the record, the ALJ's decision to

afford greater weight to the opinions of Dr. Hughes and Dr. Slavit than to the opinions of Dr. Fazio

was not erroneous.

### B.    The ALJ's Step 5 Finding is Supported by the Record

The ALJ decided this case adverse to Plaintiff at Step 5.  The ALJ found at Step 2 that

Plaintiff's ADHD, Asperger's disorder, dyslexia, expressive/receptive language disorder and

learning disorder were "severe" impairments under 20 C.F.R. § 404.1520(c) but not of Listing-level

severity.  (Tr. 15-16).  Regarding RFC, the ALJ determined that Plaintiff could perform a full range

of work at all exertional levels limited to understanding, carrying out, and remembering simple

instructions; responding appropriately to supervision, coworkers and usual work situations; and

dealing with changes in a routine work setting.  (Tr. 17).  At Step 4, the ALJ found that Plaintiff was

unable to perform his past relevant work as a retail sales clerk.  (Tr. 20).  However, at Step 5, the

ALJ found that Plaintiff was "not disabled" because, while Plaintiff's "ability to perform work at

all exertional levels has been compromised by nonexertional limitations," "these limitations have

little or no effect on the occupational base of unskilled work at all exertional levels."  (Tr. 21).  The

ALJ noted that a finding of "not disabled" was appropriate applying Section 204.00 of the "grids."

(Tr. 20).  Further, the ALJ stated that Plaintiff "retains the functional abilities to understand, carry

out, and remember simple instructions; to respond appropriately to supervision, coworkers and usual

work situations; and to deal with changes in a routine work setting" and, therefore, found that

Plaintiff "is not affected by a substantial loss of ability to meet the basic mental demands of

unskilled work" Id.  Plaintiff challenges this finding and argues that it is not supported by any evidence that work exists in significant numbers in the national economy that Plaintiff is capable of performing.

The Commissioner bears the burden at Step 5 to prove that there are other jobs in the local or national economy that Plaintiff can perform.  Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).  In determining whether a claimant's mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process.  42 U.S.C. § 423(d)(2)(B).  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

Plaintiff argues that the ALJ erred because he did not pose a hypothetical question to the VE and never specifically asked the VE if there were jobs available that someone with Plaintiff's RFC could perform.  The VE was asked about Plaintiff's experience with the Office of Rehabilitation Services and his 2010 summer work experience at Walmart.  (See Ex. 9E).  The VE indicated that Plaintiff did "very well" at Walmart and the feedback was "very good."  (Tr. 35).  The VE identified the Walmart position as light and unskilled work and that Plaintiff's problems with reading would not preclude such employment.  (Tr. 39).

In reliance on the VE's testimony and the opinions of Dr. Hughes and Dr. Slavit, the ALJ determined at Step 5 that a finding of "not disabled" was "appropriate" under Section 204.00 of the "grids" because Plaintiff's nonexertional limitations did not preclude him from meeting the basic

mental demands of unskilled work.  (Tr. 20-21).  While Plaintiff is correct that the ALJ did not identify any specific jobs that Plaintiff could perform or their numbers in the economy, this was not error because the ALJ properly decided this case by applying the "grids."  When the "grids" were promulgated, "administrative notice" was taken of the existence of a sufficient occupational base of  unskilled positions in the economy.  See 20 C.F.R. Part 404, Appendix 2 to Subpart P at § 200.00(b); and Social Security Ruling 83-10.  Thus, if the "grids" are met by a claimant, the existence of jobs in the economy is established by rule, and there is no need to articulate specific findings at Step 5.  Id.

Here, the ALJ found that Plaintiff's ability to work is subject to certain nonexertional limitations. (Tr. 17).  However, both Dr. Hughes and Dr. Slavit opined that such limitations did not "significantly erode the occupational base" and that application of Section 204.00 of the "grids" was appropriate. (Tr. 49, 60-61).  The ALJ also relied upon Social Security Ruling 85-15 which provides that the basic mental demands of unskilled work include the abilities "to understand, carry out and remember simple instructions, to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting."  Since these work abilities were not precluded by Plaintiff's RFC, the ALJ was permitted to apply the "grids" and thus Plaintiff has shown no Step 5 error.

Plaintiff additionally argues that remand is appropriate because of a conflict between the ALJ's Step 4 and 5 determinations.  While Plaintiff is correct that the ALJ's Step 4 finding that Plaintiff is unable to perform his past unskilled work is inconsistent with his Step 5 finding that Plaintiff is able to perform unskilled work, any error is harmless on this record.  First, it is undisputed that Plaintiff's short-term work at Walmart under the auspices of the Office of

Rehabilitation Services was not "past relevant work" as defined in 20 C.F.R. § 416.960(b)(1). The record indicates that Plaintiff had no "past relevant work." (Tr. 49, 60). Thus, the ALJ had no basis upon which to even make a Step 4 finding and should have gone directly from his RFC assessment to Step 5. Further, Defendant persuasively argues that the ALJ's Step 4 conclusion is a scrivenor's error based on this record. Even putting aside the issue of whether the job constituted past relevant work, it is indisputable on this record that Plaintiff did very well during his work experience at Walmart and the ALJ makes no contrary findings in his decision. It is apparent that the Step 4 finding was a scrivenor's error and, even if it was a substantive error, it was a harmless one on this record.

## VI.    CONCLUSION

For the reasons discussed herein, I recommend that the Commissioner's Motion for Order Affirming the Decision of the Commissioner (Document No. 15) be GRANTED and that Plaintiff's Motion for an Order Reversing Decision of the Commissioner (Document No. 14) be DENIED. Further, I recommend that Final Judgment enter in favor of Defendant.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


   /s/ Lincoln D. Almond
LINCOLN D. ALMOND

United States Magistrate Judge
November 21, 2014